UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| Restoration Action, Inc. | : | |
| 1901 Butterfield Road, Suite 120 | : | |
| Downers Grove, Illinois 60515 | : | Civil Action No. 1:21-cv-00400 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| Center for American Restoration, Inc. | : | |
| America Restoration Action | : | |
| Russell Vought, | : | |
| 912 South Quincy Street | : | |
| Arlington, Virginia  22204 | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, RESTORATION ACTION, INC., ("Plaintiff" or "RESTORATION ACTION"), by and through its undersigned counsel, brings this action against Defendants, CENTER FOR AMERICAN RESTORATION, INC., AMERICAN RESTORATION ACTION, and RUSSELL VOUGHT ("Defendants"), and pursuant to Fed. R. Civ. P. 65(b) of the Federal Rules of Civil Procedure; Local Rule 4.05(b); Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125; the Federal Trademark Statute 15 U.S.C. § 1051, and Virginia statutory and common law, respectfully moves this Court for a Preliminary Injunction Order enjoining and restraining Defendants, and any related organizations or companies (including parents, officers, directors, agents, owners, employees, representatives, and attorneys and all others acting under, or in concert with, any of them), from:

a.      Using any marks that are likely to cause confusion with the services offered by Plaintiff under the source-identifying marks **RESTORATION ACTION, RESTORATION PAC** or any or any other confusingly similar marks, including but not limited to **CENTER FOR AMERICAN RESTORATION, INC**. and **AMERICAN RESTORATION ACTION** or any imitation thereof in connection with Defendants' services;

b.  Using the names and marks" **RESTORATION ACTION**," "**RESTORATION PAC**,"  or  any other domain name that includes the word "**RESTORATION**," as part of  a  domain  name,  including  https://www.americanrestorationcenter.com  "or  any imitation thereof;

d.  Using misleading advertising that suggests endorsement by Plaintiff of Defendants' services when no such endorsement exists; and

e.  Unfairly competing with Restoration Action in any manner whatsoever.

In support of its motion, Plaintiff states as follows:

# I.  **Background**

### A.     Restoration Action's Trademarks

Plaintiff Restoration Action is a public interest-focused company based in Downers Grove, Illinois.  *See* Amended Verified Complaint (hereinafter, "VC") ¶ 1.  Plaintiff is a non-profit corporation that promotes the common good and general welfare.  VC ¶ 1.  It does not solicit or accept contributions designated to support or oppose candidates for public office.  Restoration Action's affiliated political action committee, Restoration PAC is a non-partisan political action committee that sponsors political activities advocating for policy changes and/or the election or defeat of candidates on the basis of time-tested conservative principles. *See* VC ¶ 10.  Founded in

2015, Restoration PAC's mission is to support or oppose candidates based on their adherence to key conservative causes. VC ¶ 19. Restoration PAC supports principled candidates in key political races who will shape the future of our country. VC ¶ 9. Restoration Action and Restoration PAC receive significant political contributions from across the United States. VC ¶ 13 As a result of its efforts, Restoration Action has received significant unsolicited publicity in terms of press coverage. VC ¶ 12. Restoration Action does not license the right to use the marks **RESTORATION ACTION** or **RESTORATION PAC** or other marks that include the word "**RESTORATION**" (hereinafter collectively referred to as the "**RESTORATION ACTION** Marks") to other public affairs education groups or political action committees in Virginia and this judicial district or to such other groups operating anywhere in the United States

Restoration Action and its affiliated political action committee, Restoration PAC, have developed trademark rights in the name and mark **RESTORATION ACTION** or **RESTORATION PAC**. Those interested in political activities and public affairs have come to understand that the name "**RESTORATION**" is strongly associated with Restoration Action and its affiliated political action committee, Restoration PAC. Restoration Action has invested a significant amount of time and money into advertising and developing its goodwill with the general public, and has sought to ensure that its marks establish its proprietary designation. VC ¶ 11. These marks have been registered at the United States Patent and Trademark Office and include the following:

Reg. No. 5,779,207    **RESTORATION PAC**

Reg. No. 5,696,980    **RESTORATION ACTION**

VC ¶ 10.   Accordingly, Restoration Action and Restoration Pac's trademarks are valid and subsisting under the Lanham Act and serve as conclusive evidence of Restoration Action and Restoration PAC's ownership of the mark and the validity of the trademark.  15 U.S.C. § 1115.

> B.    Defendants' Unlawful and Infringing Conduct

Defendant Vought filed organizational documents in order to establish the corporate Defendants with the State of Delaware on December 22, 2020, and upon information and belief, began using the marks "The Center for American Restoration" and "American Restoration Action" in early 2021. VC ¶¶ 2, 14.  Additionally, Defendants promotes their activities online via the web at their website found at https://www.americanrestorationcenter.com, VC ¶ 15, and through electronic media.  VC ¶ 15.  Defendants' website features signage in red, white, and blue the same colors used by Plaintiff.

Immediately upon learning of the existence and activities of Defendants, on March 5, 2021, Plaintiff's counsel sent Defendants a cease-and-desist letter, explicitly stating that the marks **RESTORATION PAC** and **RESTORATION ACTION**, and other marks including the word "**RESTORATION**" are the property of Plaintiff.  VC ¶ 17.  To date, Defendants have not ceased use of the marks "The Center for American Restoration" and "American Restoration Action."

Defendants' unauthorized use of names and marks confusingly similar to Plaintiff's marks continues, creating confusion, deception, and mistake in the minds of current Restoration Action consumers, including donors and potential consumers and donors.  VC ¶¶ 18, 33.

## II.    Legal Standard and Argument

 A party seeking a preliminary injunction must demonstrate that (1) it is likely to succeed on the merits of its case; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities tips in its favor; and (4) an injunction would be in the public interest.

*See Real Trust About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, (2008)).  Restoration Action satisfies each of these requirements.

A.      Likelihood of Success on the Merits

        1.      Plaintiff Has a Substantial Likelihood of Success on Its Federal Trademark Infringement and Federal False Designation of Origin and Unfair Competition Claims (Counts I and II)

The Lanham Act [15 U.S.C. § 1051 <u>et seq.</u>] was intended "to protect persons engaged in . . . commerce against unfair competition."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127); *see* 15 U.S.C. §§ 1114(1), 1117(c), 1125(a).  Congress sought to protect both consumers and registered trademark owners in enacting the Lanham Act. <u>Id.</u>  Consumers who purchase a particular product or service expect to receive services, or in the case of donors, make donations to a group,  that feature  the same characteristics every time.  <u>Id.</u> The Lanham Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused or misled.  <u>Id.</u> (citing 15 U.S.C. § 1114(1)).  Thus, trademark law ensures consistency for the benefit of consumers.  <u>Id.</u>  The Lanham Act also protects trademark owners.  <u>Id.</u>  A trademark owner has spent time, energy, and money in presenting a product to the public and building a reputation for that product.  <u>Id.</u> (citations omitted).  The Act prevents a vendor from acquiring a product that has a different set of characteristics and passing it off as the trademark owner's product, as this would potentially confuse consumers about the quality and nature of the trademarked product and erode consumer goodwill.  <u>Id.</u>

To succeed on the merits of a trademark infringement claim, a plaintiff must show that the defendants used the mark in commerce without plaintiff's consent and that the "defendant's use of

a colorable imitation of the trademark is likely to cause confusion among consumers." *Cardservice Intern., Inc. v. McGee*, 950 F. Supp. 737, 740 (E.D. Va. 1997), aff'd, 129 F.3d 1258 (4th Cir. 1997) (finding that plaintiff's mark likely to be confused with competitor's use on the internet). The determination generally boils down to the existence of "likelihood of confusion." Id. at 740-41. *See Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 422 (4th Cir. 1998) (holding that likelihood of confusion is the basic test for both common law and federal trademark infringement).

This Court may grant injunctive relief to the owner of a registered trademark whose rights have been infringed by another's use of a copy that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir. 1984). As the Fourth Circuit has explained, "[t]he ultimate question, for purposes of determining liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (citations and internal quotation marks omitted).

The primary issue in this case is whether a likelihood of confusion exists. To ascertain the likelihood of confusion between two trademarks, the Fourth Circuit has identified the following seven factors for this Court to consider:

(1) the distinctiveness of the senior mark;

(2) the similarity of the marks at issue;

(3) the similarity of the goods or services that the marks identify;

(4) the similarity of the facilities employed by the parties to transact their business;

(5) the similarity of the advertising used by the parties;

(6) the defendant's intent in adopting the same or similar mark; and

(7) actual confusion.

*Pizzeria Uno*, 747 F.2d at 1527.

Plaintiff satisfies each of these factors.  Plaintiff will address each of these factors as follows:

> i.   The distinctiveness of the senior mark

The first factor this Court must address is the distinctiveness or strength of the senior mark or marks, which in this case are Restoration Action's registered mark **RESTORATION ACTION** and **RESTORATION PAC**, registered by its affiliated political action committee.  *Pizzeria Uno*, 747 F.2d at 1527. When determining the strength or distinctiveness of a trademark, this Court must weigh the mark's conceptual strength, namely the relationship between the mark and the services in connection with which it is used, *World Gym Licensing Ltd. v. Fitness World, Inc.*, 47 F. Supp. 2d 614, 621-22 (D. Md. 1999). The stronger a mark is, the greater the likelihood of confusion. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006) and its commercial strength in the marketplace.

> a.   Conceptual Strength

Conceptual strength is determined by placing the mark on the spectrum of generic, descriptive, suggestive and arbitrary. *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 461 (D. Md. 2002). This spectrum refers to whether the mark is inherently distinctive, suggestive, descriptive or generic. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2nd Cir. 1976).  Arbitrary marks are inherently distinctive and thus receive the greatest protection against infringement. *Sara Lee*, 81 F.3d at 463. Arbitrary marks are defined as those that comprise "words, symbols, pictures, etc. that are in common linguistic use but which, when used with the

goods or services issued, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." 2 McCarthy §11:11(4th ed. 2008), p. 11-15.

As an initial matter, the Trademark Office indicated that **RESTORATION PAC** and **RESTORATION ACTION** marks are conceptually strong by issuing Restoration Action trademark registrations for the **RESTORATION PAC** and **RESTORATION ACTION** marks without requiring Restoration Action to offer proof of secondary meaning for the word "Restoration." Notably, the Examining Attorney required Restoration PAC to disclaim exclusive rights to the word "PAC" apart from the mark as a whole, but not the word "RESTORATION." *See Synergistic*, 470 F.3d at 172 (finding that by not requiring proof of the secondary meaning of plaintiff's mark the Trademark Office had presumptively determined that the mark was suggestive and therefore valid). The marks "**RESTORATION PAC**" and **RESTORATION ACTION**" have no descriptive connotation in the fields of public affairs and politics.. Therefore, the inherently distinctive marks "**RESTORATION PAC** and **RESTORATION ACTION**" should be considered suggestive, if not arbitrary, and deserving of the broadest scope of protection.

### b. Commercial Strength

Whether a mark is commercially strong depends on the degree to which the mark is known to the public. *Synergistic*, 470 F.3d at 174. The **RESTORATION PAC** and **RESTORATION ACTION** marks have been used for approximately six years, during which time Restoration Action and Restoration PAC have raised and expended millions of dollars in political contributions in to support causes and candidates. VC ¶13, Ex. 4, 5. As the copies of the articles about the activities of Restoration Action demonstrate, those participating in conservative political activities have come to recognize the **RESTORATION** name and mark as uniquely associated with

Plaintiff.   Therefore, the marks   **RESTORATION PAC** and **RESTORATION ACTION** are commercially strong.

ii.   The similarity of the two marks

Regarding the second *Pizzeria Uno* factor, this Court must evaluate the similarity of the marks at issue. *Pizzeria Uno*, 747 F.2d at 1527. To find that the marks are similar, the Fourth Circuit rule holds that the marks "need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995).  The dominant portion of Plaintiff's marks is the word "Restoration."   Defendants' marks are also dominated by the word "Restoration."  By any estimation, the marks "Center for American Restoration" and "American Restoration Action" are similar to Plaintiff's marks   **RESTORATION PAC** and **RESTORATION ACTION**.

The Fourth Circuit has held that marks must be compared in terms of their actual use in the marketplace, i.e. in the context in which the marks are seen by the ordinary consumer. *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992). The Fourth Circuit also holds, though, that the similarity of two marks is determined by examining the "dominant or salient portions of the marks." *Lone Star*, 43 F.3d at 936; *see also* 3 McCarthy § 23:42. Thus, "[w]here the 'dominant' portion of the marks is 'sufficiently similar in appearance,' a finding of a likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (quoting *Lone Star Steakhouse*, 43 F.3d at 936) (affirming injunction against use of name "Lone Star Grill" as an infringement of plaintiff's mark "Lone Star Steakhouse & Saloon").  Accordingly, Plaintiff's trademark  registration and that of its affiliated political action committee, demonstrates that the

word **"RESTORATION"** is the dominant portion of their marks.  The dominant portion of Defendants' marks "Center for American Restoration, Inc." and "America Restoration Action" is also the word "Restoration."  *See Sweetwater Brewing Co., LLC v. Great Am. Rests., Inc.*, 266 F. Supp. 2d 457, 462-63 (E.D. Va. 2003) (finding the marks "Sweetwater Brewing Company" and "Sweetwater Tavern" confusingly similar).  Accordingly, the second *Pizzeria Uno* factor weighs in favor of Plaintiff.

iii.    The similarity of the services that the marks identify

The third factor this Court must analyze when determining the likelihood of confusion between the marks is the similarity of the goods or services at issue. *Pizzeria Uno*, 747 F.2d at 1527. In other words, this Court must ask whether the goods or services sold under the marks are "closely related." *Comcet*, 429 F.2d at 1251.  The services at issue are in the same political industry.  Plaintiff sponsors political activities advocating for policy changes (VC ¶¶ 11,13 Ex. 2, 4, 5)  and Defendants offer the same services using a similar name to Plaintiff's trademark (VC ¶¶14-16 Ex. 6-8).  Accordingly, the third *Pizzeria Uno* factor weighs in favor of Plaintiff.

iv.    The similarity of the facilities employed by the parties to transact their business

Both parties offer their services via the World Wide Web for the same political purposes. Both promote their agendas and raise funds via their websites and use electronic media to drive attention to the issues they care about.   VC ¶¶11-16 Ex. 3-8.

v.    The similarity of the advertising used by the parties

The fifth *Pizzeria Uno* factor this Court must review is the similarity of the parties' advertising. *Pizzeria Uno*, 747 F.2d at 1527. In analyzing this factor, this Court should consider the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements. *Id*. at 1535; *Petro Stopping Ctrs., L.P. v.*

*James River Petroleum*, 130 F.3d 88, 95 (4th Cir. 1997). There is no dispute that **RESTORATION PAC** and **RESTORATION ACTION** advertises its services and that Defendants' advertise its services over the Internet, through email, through conservative media outlets and at many of the same conferences and public gatherings.  Defendants' advertisement of its services are similar in appearance and content as Plaintiff's advertisements.  Accordingly, the fifth *Pizzeria Uno* factor is weighs in favor of Plaintiff.  VC ¶¶11-16 Ex. 3-8.

      vi.    <u>The defendant's intent in adopting the same or similar mark</u>

The sixth factor in the likelihood of confusion analysis is Defendant's intent in adopting the name "**RESTORATION**" for similar services as Plaintiff's services offered under almost identical trademarks.  Evidence of intent to confuse the buying public is a strong indication that a likelihood of confusion exists since "one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc. to resemble the other's so as deliberately to induce confusion." *Pizzeria Uno*, 747 F.2d at 1535.  On information and belief, Defendant Vought knew of Plaintiff's services when he adopted the names "Center for American Restoration, Inc." and "American Restoration Action" for corporate Defendants.  Defendants acted in bad faith and was well aware of Plaintiff's services in the political field prior to organizing the "Center for American Restoration, Inc." and the "American Restoration Action".  Accordingly, the sixth *Pizzeria Uno* factor is weighs in favor of Plaintiff.

      vii.    <u>Actual Confusion</u>

Actual confusion is the final and most important Pizzeria Uno factor used to determine likelihood of confusion. *Lyons P'ship*, 243 F.3d at 804 (explaining that the "actual confusion factor" is often "paramount" in the likelihood of confusion analysis).  Though there is no requirement that a plaintiff produce evidence of actual confusion, when such proof is present, it

is deemed "potent evidence of infringement." *Lone Star*, 43 F.3d at 937.  In fact, proving actual confusion often proves to be difficult; parties will conduct surveys of consumers to develop evidence of actual confusion.  *Id*. at 937.

In this case, there has been actual confusion of between Plaintiff's services and Defendants' services.  On or about March 22, 2021, Plaintiff received a donation in the amount of $2,000 from a donor via its website.  On the same day, Plaintiff received an email from the donor requesting that Plaintiff stop the donation payment as he intended to make the donation to the "American Restoration" that is organized by Defendants.  Upon receiving this information, Plaintiff reimbursed the donor and informed the donor of the confusion created by Defendants' use of the "Restoration" in its name.  Accordingly, the evidence shows that there is actual confusion between Plaintiff's trademark and Defendants use of the word "Restoration" in their name.  *See Sara Lee Corp. v. Kayser-Roth Corp*., 81 F.3d 455, 463-64 (4th Cir. 1996) (finding the marks "L'eggs" and "Leg Looks" confusingly similar).  At this time, this factor weighs heavily in favor of Plaintiff.

vii.   <u>Weighing the Factors</u>

When appropriate, courts also review the sophistication of the parties' consumers.  <u>Id</u>. at 465.  Even if Plaintiff's customers are sophisticated that does not mean they are immune from confusion, or that they engage in lengthy negotiations before signing up for Plaintiff's or Defendants' services as a donor.  All it takes is a few clicks on a website. No matter the sophistication of the donors and others interested in the conservative principles espoused by both parties, the analysis is the same; the court reviews the factors.  However, not all of these factors are of equal importance in every case, nor are they always relevant in any given case.  <u>Id</u>.; *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992) ("the *Pizzeria Uno*

factors are only a guide—a catalog of various considerations that maybe relevant in determining the ultimate statutory question of likelihood of confusion.").

Overall, Plaintiff's rights in the **RESTORATION ACTION** and **RESTORATION PAC** marks are undisputed, as Restoration Action and its affiliated political action committee are the owners of registrations at the United States Patent and Trademark Office and have worked zealously to protect these rights. VC ¶¶10, 11, 13 Ex. 1, 2, 4, 5.  These registrations are prima facie evidence of its ownership and exclusive right to use the **RESTORATION ACTION** and **RESTORATION PAC** and confusingly similar marks in commerce.  *See* 15 U.S.C. § 1065. Plaintiff's trademark rights in the **RESTORATION ACTION** and **RESTORATION PAC** names and marks extend to all confusingly similar marks.  These rights stem from its continuous use of the marks in commerce for sponsorship of political activities  VC ¶¶ 11-13 and have been strengthened by Registration at the U.S. Patent and Trademark Office.  As such, consumers associate the **RESTORATION ACTION** and **RESTORATION PAC** and confusingly similar marks with political activities and the marks' reputation carries considerable goodwill throughout the United States.  VC ¶ 21.  Thus, to establish a likelihood of success on the merits, Plaintiff need only demonstrate that Defendant's use of marks confusingly similar to the **RESTORATION ACTION** and **RESTORATION PAC** marks is likely to cause consumer confusion.

A review of the factors makes clear that Defendant is infringing the **RESTORATION ACTION** and **RESTORATION PAC** marks and engaging in unfair competition by deliberately and willfully creating confusion in the minds of consumers.  For example, Defendants use the same marks, features, logos, and colors as Plaintiff without Plaintiff's permission. Like Restoration Action, Defendants use the red, white, and blue colors prominently on its website, advertising, and promotional materials.  Due to Defendants' use of marks confusingly similar to the

**RESTORATION ACTION** and **RESTORATION PAC** marks and use of features, logos, and colors, it is likely that current or potential Restoration Action donors may believe that Defendants' services are provided by, sponsored by, approved by, licensed by, affiliated with, or in some way legitimately connected with Plaintiff, or indeed are Plaintiff's services.  This concern is heightened because both Plaintiff and Defendants participate in political activities in the same channels via the Internet and conservative media, and both Plaintiff's and Defendants' promotional materials feature the same colors, themes and issues.  Defendants' use of marks confusingly similar to the **RESTORATION ACTION** and **RESTORATION PAC** marks and identical promotional colors adversely affects Plaintiff's goodwill and creates a likelihood of confusion.  Therefore, a substantial risk exists that Defendant will succeed in highjacking Plaintiff's goodwill and create further confusion in the minds of consumers.

Additionally, upon information and belief, Defendants may be using a modification of the name, or a nickname, namely "Restoration," for their businesses Center for American Restoration, Inc. and American Restoration Action.  Should this be the case, Defendants are even more likely to be in violation of trademark law.

In conclusion, Plaintiff has used and promoted its services under the **RESTORATION PAC** and **RESTORATION ACTION** marks for six years across the United States. VC ¶ 19. Second, via commercials, social media, published materials, and its website, Restoration Action has reached into the homes of customers on the national level, spending, along with its members, millions of dollars to ensure that its Marks are well known across the country.  VC ¶¶  12-14. Third, Restoration Action has created a tight connection between the **RESTORATION PAC** and **RESTORATION ACTION** marks and its political activities, with distinct colors and graphics and the **RESTORATION PAC** and **RESTORATION ACTION** marks are being used in

conjunction with the Plaintiff's **RESTORATION** name to signal to customers that the name is synonymous with the **RESTORATION PAC** and **RESTORATION ACTION** brand.  Finally, the public clearly identifies Plaintiff's marks with Restoration Action.  Id. at ¶¶ 18-21.

2. Plaintiff Has a Substantial Likelihood of Success on Its Federal Anti-Cyber Piracy Claim (Count III)

The Federal Anti-Cyber Piracy Act ("ACPA") provides prevents "cybersquatting," an expression that has come to mean the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit from the goodwill associated with those trademarks.  See 15 U.S.C. § 1125(d).  *Virtual Works, Inc. v. Volkswagen of Am., Inc*., 238 F.3d 264, 271 (4th Cir. 2001) (finding that ACPA "was enacted to prevent the expropriation of protected marks in cyberspace and to abate the consumer confusion resulting therefrom").

Defendants' actions related to the https://www.americanrestorationcenter.com domain name constitute a violation of the ACPA because (1) the domain name is confusingly similar to, or dilutive of, the **RESTORATION ACTION** marks, and (2) Defendants had a bad faith intent to profit from using a confusingly similar mark in the domain name.  VC ¶ 25.  15 U.S.C. § 1125(d)(1)(A).   Plaintiff uses the domain name  https://www.restorationofamerica.com/  and Defendants' use of the https://www.americanrestorationcenter.com domain name makes it exceptionally likely that current and potential consumers, including donors  and potential donors, of Restoration Action will be misled into believing that Defendants are affiliated with Restoration Action.  This high potential for confusion is further compounded by the fact that the Defendants' website uses the distinctive colors utilized by Restoration Action on its website.

The **RESTORATION ACTION** and **RESTORATION PAC** marks are Federally Registered and well known.  VC ¶ 10, Ex. 1.  The  **RESTORATION ACTION** and

**RESTORATION PAC** marks are featured prominently on Plaintiff's official website, along with its advertising and promotional materials. Additionally, Restoration Action spends millions of dollars on advertising and promoting its services, along with those of its members, each year. Id. at ¶ 13.

Defendant's misappropriation of the **RESTORATION ACTION** Marks took place well after Plaintiff's Marks became famous and distinctive. On information and belief, Defendants obtained the domain name americanrestorationcenter.com in early 2021. In comparison, Plaintiff first used the **RESTORATION ACTION** and **RESTORATION PAC** marks in 2015. VC ¶ 19.

Defendant's use of a domain name that includes words confusingly similar to the **RESTORATION ACTION** and **RESTORATION PAC** marks directly impacts the distinctiveness of the **RESTORATION ACTION** and **RESTORATION PAC** marks. Restoration Action is entitled to an injunction against Defendants, as upon information and belief, Defendants willfully intended to trade on the recognition of the **RESTORATION ACTION** and **RESTORATION PAC** marks in violation of the Federal Anti-Cyber piracy Act.

3.   Plaintiff Has a Substantial Likelihood of Success on Its Claim of Common Law Virginia Trademark Infringement (Count IV)

Virginia Statutes, which uses similar language to the Federal Lanham Act in describing trademark infringement, bars the use of "any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive." Virginia Code § 59.1-92.12 (2011). It also bans individuals from reproducing and using registered trademarks, "on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive." Id. Finally, where a

violation is found, the offender is liable under civil action and must provide appropriate remedy, unless the violation of the mark at issue was committed unwittingly.  Id.

As previously stated, Defendant's use of marks confusingly similar to the **RESTORATION PAC** and **RESTORATION ACTION** marks is a trademark violation, under both federal and Virginia law.  Defendants' use of the Plaintiff's trademark without the permission or authorization of "RESTORATION" is extremely likely to cause confusion, mistake and deception among consumers and the general public.  Upon information and belief, Defendant's continued use of the Plaintiff's trademarks is likely to injure the activity and reputation of Restoration Action, will diminish the distinctive quality of Plaintiff's source-identifying marks, and will cause irreparable injury to Restoration Action's trade and goodwill with the public.  As such, Defendant's wrongful acts constitute common law trademark infringement in Virginia, as the aforementioned acts are greatly and irreparably damaging to Restoration Action and will continue to cause great harm to Plaintiff unless enjoined by this Court.

Moreover, the **RESTORATION PAC** and **RESTORATION ACTION** marks have been famous for several years across North America, and Restoration Action includes proprietary designations when using its Marks, notably by using the encircled R symbol (®) when a Mark is used.  VC ¶ 19.  *See Aztar Corp. v. MGM Casino*, NO. 00-833-A, 2001 WL 939070, at *5 (E.D. Va. Apr. 9, 2001) (finding that Defendant's domain name and web site are likely to cause consumer confusion and have diluted Plaintiff's trademark).  Accordingly, Defendants' acts constitute trademark infringement in violation of Virginia common law.

    4.    Plaintiff Has a Substantial Likelihood of Success on Its Common Law Virginia Unfair Competition Claim (Count V)

Defendants' actions constitute unfair competition under the Virginia common law.  Under Virginia law, a claim for unfair competition is essentially identical to the elements of the same

claim under the Lanham Act. *See Lamparello v. Falwell*, 420 F.3d 309, 312 (4th Cir. 2005) ("[A plaintiff's] state-law unfair competition claim rises or falls with [its federal claims of infringement and false designation of origin."); *see also Lone Star*, 43 F.3d at 930 n. 10 ("[t]he test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved").

Here, Plaintiff has met all the requirements of a unfair competition claim by showing that it is the owner of a valid trademarks – **RESTORATION ACTION** and **RESTORATION PAC** – and that Defendants have used virtually identical marks in commerce in connection with the promotion and offering of identical, competing services, and that Defendants' use of the mark is likely to confuse consumers. Defendants use of variations on the "Restoration" name to advertise the same services provided by Restoration Action, intentionally implying an association with or authorization from Restoration Action that does not exist. Consumer confusion is exceptionally likely, particularly because Restoration Action's use of its name is nationwide across the country since 2015, and Defendants' names promotes the same services. For the foregoing reasons, Restoration Action is likely to succeed on its claim for unfair competition under the Virginia common law.

5.   Plaintiff Has a Substantial Likelihood of Success on Its Virginia's Consumer Protection Act (Count VI)

Defendants' wrongful act of using marks confusingly similar to the **RESTORATION ACTION** and **RESTORATION PAC** marks violates Virginia's Consumer Protection Act which prohibits "Misrepresenting the affiliation, connection, or association of the supplier, or of the goods or services, with another." Virginia Code § 59.1-200. The Act's purpose is "to protect the consuming public and legitimate business enterprises" from those who engage in the prohibited

18

acts.  Virginia Code § 59.1-197.  The statute provides a private right of action for "[a]ny person who suffers loss as the result of a violation of this chapter [and they] shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater." Virginia Code § 59.1-204, as well as allowing for declaratory judgments and injunctions, Id.  The statute also provides that, "in addition to any damages awarded, such person also may be awarded reasonable attorneys' fees and court costs."  Id.

Here, Defendants' use of marks confusingly similar to the **RESTORATION PAC** and **RESTORATION ACTION** marks is likely to make consumers believe there is a connection between defendants and Restoration Action. Defendants' actions are deceptive or fraudulent in that Defendants intentionally attempt to capitalize on consumer confusion and the goodwill of Restoration Action to divert customers away from Restoration Action.  Further, due to Defendants' use of Plaintiff's distinct colors and similar images on both its website and marketing materials, consumers and donors will likely believe that they are supporting Plaintiff's services.  Defendants' actions have caused and will likely continue to cause confusion, mistake, or deception in the minds of the public, and negatively affect Plaintiff's goodwill.  Therefore, Plaintiff is likely to succeed on its Virginia Consumer Protection Act claim.

       B.    <u>Irreparable Injury</u>

Defendants' use of marks confusingly similar to the **RESTORATION PAC** and **RESTORATION ACTION** Marks degrades Plaintiff's reputation and is likely to cause confusion, mistake, and deception.  Defendants' use of confusingly similar marks affects consumers' decision whether to use Plaintiff's services.  Consumers also may believe that Defendants' are associated with Plaintiff.  Unless the Court intervenes to restrain and enjoin Defendants from using designations confusingly similar to  Plaintiff's Marks, Defendants will

continue to cause Plaintiff to be irreparably harmed and will deprive Plaintiff of its protected interest in the accumulated goodwill generated by Plaintiff's promotion, advertising, and services. Plaintiff has no adequate remedy at law to rectify the unquantifiable harm to its goodwill by Defendants' use of designations confusingly similar to Plaintiff's Marks. The entry of preliminary injunctive relief will not adversely affect any third parties and will further the public interest by eliminating the confusion, deception, infringement, and the like, as described herein.

C.    Balance of Hardships

Plaintiff's loss of goodwill through Defendants' unauthorized use of designations confusingly similar to Plaintiff's Marks outweighs any economic harm to Defendants. Additionally, Defendants' extremely short use of designations confusingly similar to Plaintiff's Marks, which, upon information and belief, began in early 2021, further negates any hardship Defendants may claim. In sharp contrast, Defendants' aforementioned acts are greatly and irreparably damaging to Restoration Action unless enjoined by this Court, and Restoration Action is without an adequate remedy at law.

D.    Public Interest

The injunction is not adverse to the public interest, because it is well-settled that the public interest is served by preventing consumer confusion in the marketplace. *See Scotts Co. v. Pursell Industries, Inc.*, CIV. A. 3:02CV240, 2002 WL 34528439, at *4 (E.D. Va. July 2, 2002) (finding that public policy weighs in favor of an injunction until the veracity of the advertising can be determined by the finder of fact). Indeed, one of Congress' primary purposes in enacting trademark legislation was to make consumers confident that they could purchase brands without being confused or misled. 15 U.S.C. § 1114(1); S. Rep. No. 100-515, at 4 (1988)). This is the very harm inflicted on the public here. Consumers purchasing services and/or making donations

under the "RESTORATION" Mark from Defendants are likely to believe that they are obtaining the same services or supporting the same candidates or causes that they would be supporting if they were donating to the authorized Restoration Action website, when in fact they are not.

## III.   <u>Conclusion</u>

Accordingly, because Plaintiff has satisfied the four requirements for a preliminary injunction, Plaintiff prays:

i.   That Defendants and any related organizations, companies, (including parents, officers, directors, agents, owners, employees, representatives and attorneys and all others acting under, or in concert with them, or with any of them), be forthwith preliminarily and permanently enjoined and restrained from:

    a.   Using the Marks "Center for American Restoration" and "American Restoration Action" and/or source identifying words confusing similar to the marks **RESTORATION ACTION** or **RESTORATION PAC** and any other marks with the word "RESTORATION" or any imitation thereof upon or in connection with Defendants' services;

    b.   Using misleading advertising that suggests endorsement by Plaintiff of Defendants' services when no such endorsement exists;

    c.   Using the domain name americanrestorationcenter.com or any other domain name that includes the word "RESTORATION" and turning over such domain name(s) to Plaintiff;

    d.   Unfairly competing with Restoration Action in any manner whatsoever; and

   ii.      For an Order holding that Defendants' activities complained of constitute Federal and State Statutory and Common Law Trademark Infringement and Federal Statutory Unfair Competition and State Common Law Unfair Competition; and a violation of the Virginia Consumer Protection Act;

  iii.      For an Order directing Defendants to file with this Court and to serve upon Plaintiff within thirty (30) days after service of the injunction, a report, in writing, and under oath, setting forth in detail the manner and form in which Defendants has complied with the injunction and any further orders of this Court;

  iv.      That Defendants and any related organizations, companies, (including parents, agents, employees, representatives, and all others acting under its direction or control or in concert with them, or any of them), be ordered to remove any reference designations confusingly similar  to **RESTORATION PAC** or **RESTORATION ACTION** and other marks with the word "RESTORATION" online and to deliver up for destruction all advertising materials, promotional materials, flyers, signs, and any and all other materials that bear the RESTORATION mark;

   v.      Pursuant to 15 U.S.C. § 1117 and the common law, Plaintiff be awarded its attorneys' fees and costs; and

  vi.      For such other and further relief as the Court may deem proper.

                        Respectfully submitted,

                        RESTORATION ACTION, INC.

                        /s/ Thomas W. Brooke
                        Thomas W. Brooke
                        Virginia Bar No. 32388
                        **HOLLAND & KNIGHT LLP**
                        800 17th Street, NW
                        Suite 1100

Washington, D.C. 20006
Telephone:  (202) 663-7271
Facsimile:  (202) 955-5564
E-mail:  thomas.brooke@hklaw.com

*Attorneys for Plaintiff*
*Restoration Action, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2021, a true and correct copy of the foregoing was served, by email and first class mail, postage prepaid, on the following:

Kimberly K. Dodd
Foley & Lardner, LLP
777 East Wisconsin Avenue
Milwaukee, MI 53202-5306

/s/ Thomas W. Brooke
Thomas W. Brooke
Virginia Bar No. 32388
**HOLLAND & KNIGHT LLP**
800 17th Street, NW
Suite 1100
Washington, D.C. 20006
Telephone:  (202) 663-7271
Facsimile:  (202) 955-5564
E-mail:  thomas.brooke@hklaw.com
*Attorneys for Plaintiff*
*Restoration Action, Inc.*